193 N.J. Super. 398 (1984)
474 A.2d 1077
BOROUGH OF WRIGHTSTOWN, PLAINTIFF-RESPONDENT,
v.
LOUIS E. MEDVED, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 1983.
Decided March 5, 1984.
*400 Before Judges BISCHOFF, PETRELLA and BRODY.
Emerson L. Darnell, attorney for appellant.
Sever and Hardt, attorneys for respondent (Ernest N. Sever on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
In an opinion reported at 4 N.J. Tax 582 (1982), the Tax Court upheld the constitutionality of N.J.S.A. 54:4-3.30 against the charge that it violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The facts are fully stated in the opinion below and need not be repeated here to deal with the legal issues that have been raised. Under attack is a provision which grants a property tax exemption to "the widow" of a New Jersey war veteran who became totally disabled as the result of active military service. Defendant, the widower of such a veteran, claims the exemption. He contends that the statute sexually discriminates against him and his deceased wife. The tax court judge upheld the statute and reversed the county board judgment which had allowed the exemption. We reverse the judgment of the tax court.
The exemption for veterans and their widows appears in N.J.S.A. 54:4-3.30 (the statute). The relevant provisions are as follows:
a. The dwelling house and the lot or curtilage whereon the same is erected, of any citizen and resident of this State, now or hereafter honorably discharged *401 or released under honorable circumstances, from active service, in time of war, in any branch of the Armed Forces of the United States who has been or shall be declared by the United States Veterans Administration or its successors to have a service-connected disability ... declared ... to be a total or 100% permanent disability ... shall be exempt from taxation....
b. The widow of any such citizen and resident of this State who at the time of his death was entitled to the exemption provided under this act, shall be entitled, on proper claim made therefor, to the same exemption as her husband so had, during her widowhood and while a resident of this State, for the time that she is the legal owner thereof and actually occupies the said dwelling house or any other dwelling house thereafter acquired.
The statute also provides an exemption for specific disabling injuries. It is conceded that defendant would qualify for the exemption had he been a disabled veteran's widow.
Art. VIII, § 1, ¶ 1 of the 1947 New Jersey Constitution provides in part: "Property shall be assessed for taxation under general laws and by uniform rules." The exemption provided for in the statute is contrary to that constitutional provision because it is based on the personal status of the owner rather than the use to which the property is put. N.J. Turnpike Auth. v. Washington Tp., 16 N.J. 38, 44-45 (1954). That provision of the Constitution presents no problem, however, because another provision of the Constitution expressly authorizes the Legislature to enact the exemption in question. Art. VIII, § 1, ¶ 3, prior to a December 8, 1983 amendment provided in relevant part:
3. Any citizen and resident of this State now or hereafter honorably discharged or released under honorable circumstances from active service, in time of war or of other emergency as, from time to time, defined by the Legislature, in any branch of the Armed Forces of the United States ... who has been or shall be declared by the United States Veterans Administration, or its successor, to have a service-connected disability, shall be entitled to such ... deduction from taxation as from time to time may be provided by law.... The widow of any [such] citizen and resident of this State ... shall be entitled, during her widowhood, and while a resident of this State, to the deduction or cancellation in this paragraph provided for honorably discharged veterans and to such further deductions as from time to time may be provided by law.
That paragraph also provided an annual tax credit of $50 for veterans and authorized the Legislature to extend the credit to a veteran's widow. The extension was accomplished by N.J.S.A. 54:4-8.10 et seq.
*402 "To withstand constitutional challenge, ... classifications by gender must serve important governmental objectives and must be substantially related to the achievement of those objectives." Craig v. Boren, 429 U.S. 190, 199, 97 S.Ct. 451, 458, 50 L.Ed.2d 397, 407 (1976), reh. den. 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977). The burden "is on those defending the discrimination to make out the claim to justification...." Wengler v. Druggists Mutual Ins. Co., 446 U.S. 142, 151, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107, 116 (1980). The Borough[1] justifies the gender-based classification favoring veterans' widows on the basis that it "was reasonably designed to further the state's policy of cushioning the financial impact of spousal loss upon the sex for whom that loss imposed a disproportionately heavy burden."
The Borough's argument echoes the language of Kahn v. Shevin, 416 U.S. 351, 355, 94 S.Ct. 1734, 1737, 40 L.Ed.2d 189, 193 (1974), on which the tax court exclusively relied. In that case Florida gave all widows a limited tax credit. The court was satisfied that women as a class are economically disadvantaged in the labor market and so the death of a spouse is likely to create special economic hardship on widows not shared by widowers as a class. Here, however, the class of women receiving a tax break is narrower than all widows so the definition of the class must be further justified.
We have noted that the purpose of the veterans' tax-relief legislation was "to compensate veterans for the experiences of war and to encourage veterans to purchase property in the State." Darnell v. Township of Moorestown, 167 N.J. Super. 16, 18 (App.Div. 1979), certif. den. 81 N.J. 292 (1979). Knowing that his widow will receive the exemption provides assurance to the veteran, the primary object of the Legislature's concern, that she will have some measure of economic relief when there is likely to be a special need for it. In the case of a totally disabled veteran, who is probably not gainfully employed, the *403 need is likely to be especially acute. Yet the statute provides no relief to a surviving spouse if the veteran is a woman. By discriminating in favor of women who are widows of veterans, the statute discriminates against women who are veterans.
The United States and New Jersey Supreme Courts have struck down legislation that produces this back-handed discrimination against women. See, e.g., Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (Social Security benefits to widow but not widowers caring for children of the deceased wage earner); Califano v. Goldfarb, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (widower but not widow required to prove dependency in order to receive Social Security benefits); Wengler v. Druggists Mutual Ins. Co., supra (widower but not widow required to prove dependency in order to receive workers' compensation benefits). In striking down a widower's dependency test for workers' compensation benefits, our Supreme Court has said:
It is impermissible to employ gender-based distinctions premised upon "archaic and overbroad" stereotypes regarding the economic dependency of women and thus to deny a female wage earner protection for her family equal to that afforded a comparable male wage earner. Weinberger v. Wiesenfeld, supra, 420 U.S. at 643, 95 S.Ct. at 1230-1231, 43 L.Ed.2d at 521-522. In the context of our workers' compensation scheme, the dependency provisions for widows were undoubtedly conceived as a remedial measure to help women overcome economic handicaps. They are based, however, on assumptions of female economic disablement which no longer enjoy currency. The net result of this stock approach is that a married woman's employment does not yield the same benefits which a married man's generates for his surviving spouse and family. Comparing men and women as employees, the ultimate effect of the dependency provisions upon a woman worker is to denigrate the worth of her efforts and shrink the fruit of her labors. From this vantage point, the statutory dependency scheme hurts rather than helps women. [Tomarchio v. Township of Greenwich, 75 N.J. 62, 73 (1977).]
It is clear from the foregoing that Art. VIII, § 1, ¶ 3 of the New Jersey Constitution (prior to its amendment in 1983), N.J.S.A. 54:4-3.30 and 54:4-8.10 et seq. all violate the Fourteenth Amendment of the United States Constitution insofar as they withhold from spouses of female veterans the tax relief given spouses of male veterans.
*404 The 1983 amendment substitutes "spouse" for "widow" and makes other changes to render Article VIII gender-neutral. It is fair to expect the Legislature to follow suit by amending N.J.S.A. 54:4-3.30 and N.J.S.A. 54:4-8.10 et seq. in time for the 1984 tax year. Even without a statutory amendment, however, we are virtually certain that the Legislature would prefer to save the exemption for widows by extending it to widowers. See Tomarchio v. Township of Greenwich, supra, 75 N.J. at 75-76, where the Court applied to widowers the conclusive presumption of dependency that the Workers' Compensation Act had given only to widows saying:
This remedy is least destructive of the dominant legislative plan in providing dependency benefits. The alternative of imposing a requirement of proof of dependency upon widows would constitute a greater disruption of the statutory scheme, since it would countermand the Legislature's concern for the welfare of the widows of working men. The constitutional dictate entitling widowers to similar solicitude does not require sacrifices by widows. [Id. at 76.]
We further conclude that the New Jersey Constitution did not bar defendant from receiving the exemption even though he applied for it in 1981, two years before adoption of the amendment extending the exemption to veterans' widowers. Interpreting a constitution is approached in the same manner as interpreting a statute. We must "find and heed the intent of the legislators, constitutional as well as statutory." In re Forsythe et al. Application, 91 N.J. 141, 148 (1982). There can be no doubt that both the constitutional and statutory legislators would have preferred to obey the mandate of the United States Constitution by extending the exemption to veterans' widowers rather than by withdrawing it from veterans' widows. In such circumstances it is proper that we engage in "judicial surgery" to carry out that intent. Callen v. Sherman's Inc., 92 N.J. 114, 134 (1983). We, therefore, read the gender-neutralizing provisions of the 1983 amendment into the Constitution as it was before the amendment.
Another way to arrive at the same result is to apply the 1983 amendment retroactively. A constitutional provision may be given retroactive effect if that is the intent of its framers. *405 See Goff v. Hunt, 6 N.J. 600, 608 (1951). That intent may be found where the provision is "ameliorative or curative" and will not result in "manifest injustice" to a party adversely affected by retroactive application. Gibbons v. Gibbons, 86 N.J. 515, 523 (1981) (applying retroactively a statutory amendment excluding from equitable distribution non-interspousal gifts received during marriage). It is true that the Borough will suffer from the loss of tax revenues but there is always that risk when a taxpayer prosecutes a tax appeal. Statistically, the impact of retroactivity on municipal budgets would appear slight. The class of widowers of totally disabled veterans who served in time of war is probably minuscule. We have been told of no other member of that class besides defendant who has filed a timely appeal from a rejection of his application for exemption.
The judgment of the tax court is reversed and the judgment of the county board of taxation, allowing the exemption, is reinstated.
NOTES
[1] The Attorney General has chosen not to participate in this case.