RIMM, J.T.C.
This is a local property tax matter in which plaintiff seeks exemption from local property taxation, pursuant to N.J.S.A 54:4-3.30 and article 8, section 1, paragraph 3 of the New Jersey Constitution, as the surviving spouse of a 100% permanently disabled veteran. The property for which the exemption is claimed is a single-family residence located at 804A Balmoral Court. It is designated as block 1587, lot 804.01 on the tax map of defendant taxing district. Plaintiff took title to the residence on February 22,1991 at which time she was the widow of Anthony J. Garma, Jr., an honorably discharged 100% permanently disabled veteran, who died on January 7,1991 in Florida. Plaintiff has not remarried.
For the tax year 1991, the subject property was assessed as follows:
Land $ 8,600
Improvements 45,300
Total $53,900.
Plaintiff, claiming exemption from local property taxation under N.J.S.A 54:4-3.30 and the New Jersey Constitution, filed a petition of appeal with the Ocean County Board of Taxation requesting a judgment that her property is exempt from local property taxation. On October 3, 1991, the Ocean County Board of Taxation entered a judgment denying the petition. The judgment contained the following language: “Total exemption for surviving spouse of 100% disabled veteran denied. Said veteran was not a *4 resident of N. J. at the time of his death.” Plaintiff thereafter filed a complaint in this court seeking a judgment granting her exemption from local property taxation for the subject property. Following the filing of the complaint, plaintiff moved for summary judgment granting her exemption from local property taxation for her residence. Although there is no cross motion for summary judgment, in his letter memorandum in opposition to plaintiffs motion for summary judgment, counsel for defendant urges the court to deny plaintiffs application for an exemption. Since there are no factual disputes, the matter can now be completely decided.
In making her application for summary judgment, plaintiff presents the following facts, as well as those relating to her present ownership of the subject property. Plaintiff was born in Weehawken, New Jersey on November 2,1925. Her husband, the late Anthony J. Garma, Jr., was bom in Hoboken, New Jersey on October 29, 1923. He was a veteran of the U.S. Army, having been honorably discharged on October 15,1943. Plaintiff and her late husband lived in New Jersey until 1974 when they moved to Florida. They ultimately purchased a home at 475 N.E. 8th Avenue, Deerfield Beach, Florida on October 5, 1979, and sold it on August 16, 1990. During their ownership of the property in Deerfield Beach, plaintiff and her late husband received a total exemption from local property taxes from Broward County, Florida.
Plaintiffs two children, and their families, reside in Ocean County, New Jersey. Plaintiff claims that a Veterans Administration clinic was to open in Brick Township, New Jersey and that she and her husband had wanted to return to Ocean County for some time. Since the Brick facility would be convenient for her husband, she and her husband made every effort to sell their home in Deerfield Beach. The Deerfield Beach property was listed for sale for about two years, and was sold by plaintiff and her husband on August 16, 1990. Prior to that date, plaintiff rented an apartment in Plantation, Florida and disposed of many of her personal belongings in anticipation of her return, with her *5 husband, to New Jersey, after the opening of the Veterans Administration clinic in Brick Township.
Plaintiffs husband died on January 7, 1991, a resident of the State of Florida. At the time of Mr. Ganna’s death, he and plaintiff did not reside in New Jersey and did not own a residence in New Jersey. Following her husband’s death, plaintiff came to New Jersey and resided with her daughter for a short time. During that time, she located the subject property in Lakewood. She then returned to Florida to “wrap up [her] affairs,” and then she moved into the subject property which she had purchased on February 22, 1991.
Plaintiffs complaint in the Tax Court is in three counts. In the first count, plaintiff claims that she is a victim of discrimination. She demands judgment granting exemption from real estate taxes pursuant to N.J.S.A 54:4-3.30 for the property which is the subject of this litigation. In the second count, plaintiff claims that she has been denied the equal protection of the laws guaranteed to her by the United States Constitution. Again, she demands judgment granting exemption from real estate taxes pursuant to N.J.S.A 54:4-3.30 for the property which is the subject of this litigation. In the third count, she seeks a judgment ordering defendant to repay to her all taxes which have been paid by her since the date she claims her property was entitled to exemption from taxation. In all three counts she demands such other relief as may be appropriate.
Plaintiffs brief in support of her motion for summary judgment makes two points. Plaintiff is being denied equal protection of the laws guaranteed to her by the United States Constitution. She has also been denied “the right of migration” in violation of the Privileges and Immunities Clause of article IV of the United States Constitution. At the end of point one in her brief, “[t]his Court is urged to declare the statute, and yes, the New Jersey Constitution provision in violation of the Fourteenth Amendment of the United States Constitution” because they require the veteran to have been a citizen and resident of this State in order for the tax exemption to be available to his or her surviving *6 spouse.[1] At the end of point two in her brief, plaintiff says, “it is inescapable that New Jersey’s scheme of tax exemption under N.J.S.A. 54:4-8.30, as it applies to Plaintiff ... violates Article Ilf’s Privileges and Immunities Clause.” At no time in her brief does plaintiff claim that the Constitution of the State of New Jersey and the applicable statute should be extended to include her. If plaintiff is correct, and if both the Constitution of the State of New Jersey and N.J.S.A 54:4-3.30 are declared to be in violation of the United States Constitution, she would not be entitled to any exemption. Inferentially, however, plaintiff seeks an extension of both the New Jersey Constitution and the statute to include her.
Article 8, section 1, paragraph 3 of the Constitution of the State of New Jersey relates to exemption from real property taxation for property owned by veterans and their surviving spouses. In pertinent part, the paragraph provides as follows:
Any citizen and resident of this State now or hereafter honorably discharged or released under honorable circumstances from active service, in time of war or other emergency as, from time to time, defined by the Legislature, in any branch of the Armed Forces of the United States ... who has been or shall be declared by the United States Veterans Administration, or its successor, to have a service-conneet-ed disability, shall be entitled to such further deduction from taxation as from time to time may be provided by law____ The surviving spouse of any citizen and resident of this State ... who has been or may hereafter be honorably discharged or released under honorable circumstances from active service in time of war or of other emergency as so defined in any branch of the Armed Forces of the United States shall be entitled, during her widowhood or his widowerhood, as the case may be, and while a resident of this State, to the deduction or cancellation in this paragraph provided for honorably discharged veterans and to such further deductions as from time to time may be provided by law.
The implementing legislation, N.J.S.A 54:4r-3.30, provides in pertinent part as follows:
a. The dwelling house and the lot or curtilage whereon the same is erected, of any citizen and resident of this State, now or hereafter honorably discharged or released under honorable circumstances, from active service, in time of war, in any branch of the Armed Forces of the United States who has been or shall be declared *7 by the United States Veterans Administration or its successors to have a service-connected disability ... declared by the United States Veterans Administration or its successor to be a total or 100% permanent disability ... shall be exempt from taxation____
b. The surviving spouse of any such citizen and resident of this State who at the time of death was entitled to the exemption provided under this act, shall be entitled, on proper claim made therefor, to the same exemption as the deceased had, during the surviving spouse’s widowhood or widowerhood, as the case may be, and while a resident of this State, for the time that the surviving spouse is the legal owner thereof and actually occupies the said dwelling house or any other dwelling house thereafter acquired.
/.
Plaintiff claims that she is being denied equal protection of the laws and that “she remains in a classification that discriminates against her.” She argues that N.J.S.A 54:4-3.30 contains a “fixed date” or “fixed event” residence requirement. She says that the exemption provisions unlawfully divide veterans’ surviving spouses into two classes: resident surviving spouses who resided in New Jersey on the spouse’s date of death and who qualify for the exemption; and resident surviving spouses who establish residence after the spouse’s death and who do not qualify for the exemption.
Plaintiff relies first on Hooper v. Bernalillo County Assessor, 472 U.S. 612, 105 S.Ct. 2862, 86 L.Ed.2d 487 (1985). In Hooper, a Vietnam veteran contended that a New Mexico statute, which granted a tax exemption limited to those Vietnam veterans who resided in the state before May 8, 1976, violated the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Hooper and his wife, Mary, established residence in New Mexico on August 17, 1981. Hooper otherwise qualified under the applicable New Mexico statute for a $2,000 veteran’s tax exemption, but the assessor of Bernalillo County denied the exemption claim because Hooper had not been a state resident before May 8,1976. Plaintiffs said the applicable statute violated their right to equal protection of the law and their constitutional right to migrate to New Mexico. The New Mexico Court of Appeals affirmed the denial of the exemption, “noting that the statute did not affect ‘such fundamental interests as *8 voting, welfare benefits, or public medical assistance,’ [and] concluded that the statute did not unconstitutionally burden an exercise of the right to travel.” Id. at 615, 105 S.Ct. at 2865, 86 L.Ed.2d at 492. The New Mexico Court held that the statute was consistent with the Equal Protection Clause because it “ ‘reflects legitimate state purposes’ and ‘bears a reasonable relationship to those purposes.’ ” Id. at 616, 105 S.Ct. at 2865, 86 L.Ed.2d at 492. The New Mexico court reasoned that “‘[a] state’s interest in expressing gratitude and rewarding its own citizens for honorable military service is a rational basis for veterans’ preferences,’ and that the state legislature is ‘entitled to limit the period of time within which [veterans] may choose to establish residency.’” Ibid. The United States Supreme Court reversed.
The United States Supreme Court said that, while the New Mexico statute did not impose any threshold waiting period in order to ensure bona fide residence, it contained a fixed date residence requirement. The statute thereby divided resident Vietnam veterans into two groups: resident veterans who resided in New Mexico before May 8, 1976, and thus qualified for the exemption; and resident veterans who established residence after May 8, 1976 and thus did not qualify for the exemption. When there is an unequal distribution of benefits, the distinctions on which the distribution is based are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. Generally, a law respecting taxation will survive that scrutiny if the distinctions rationally further a legitimate state purpose, such as benefitting veterans. A higher level of scrutiny, however, is applied to tax statutes imposing durational residence requirements, because they create “‘fixed, permanent distinctions between ... classes of concededly bona fide residents’ based on when they arrived in the State.” Id. at 617, 105 S.Ct. at 2865-66, 86 L.Ed.2d at 493 (quoting Zobel v. Williams, 457 U.S. 55, 59, 102 S.Ct. 2309, 2312, 72 L.Ed.2d 672, 677 (1982)).
Two justifications had been advanced by defendant for the distinction made by the exemption statute: veterans are encouraged to settle in the state; and the statute is an expression of *9 New Mexico’s appreciation to its “own citizens for honorable military service.” Id. at 619, 105 S.Ct. at 2866, 86 L.Ed.2d at 494. In response, the Supreme Court said that the distinction between veterans who establish residence before May 8, 1976, and those who arrived after that date bears no rational relationship to the objective of encouraging Vietnam veterans to move to New Mexico. Ibid. The Court said that the state “cannot plausibly encourage veterans to move to the State by passing such retroactive legislation.” Ibid.
The Court then went on to say that while one component of the rationale for the statute, namely, rewarding veterans who resided in the state before May 8, 1976 for their military service, is legitimate, the New Mexico legislation does not simply distinguish between resident veterans and non-resident veterans. It conferred a benefit only on “established” resident veterans. Such an objective is “not a legitimate state purpose,” because the state cannot single out certain residents for tax exemptions and reward only those certain previous residents for their contributions as veterans. Id. at 623, 105 S.Ct. at 2868, 86 L.Ed.2d at 496. The Supreme Court said:
The Stats may not favor established residents over new residents based on the view that the State may take care of “its own,” if such is defined by prior residence. Newcomers, by establishing bona fide residence in the State, become the State’s “own” and may not be discriminated against solely on the basis of their arrival in the State after May 8, 1976.
[Ibid, (quoting Zobel, supra, 457 U.S. at 59, 102 S.Ct. at 2312, 72 L.Ed.2d at 677).]
Thus, the Court held that the fixed date residence requirement of the New Mexico statute violated the Equal Protection Clause of the United States Constitution, because
the Constitution will not tolerate a state benefit program that “creates fixed, permanent distinctions ... between ... classes of concededly bona fide residents, based on how long they have been in the State.”
[ZMdJ
Plaintiff also relies on Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). In that case, the United States Supreme Court held that an Alaska statute distributing income from the state’s natural resources to the state’s citizens based on length of each citizen’s residence violated the Equal Protection *10 Clause of the United States Constitution. Alaska’s statute provided for the distribution of state income derived from its natural resources to the adult citizens of the state in varying amounts based on the length of each citizen’s residence. The Alaska Supreme Court sustained the constitutionality of the statute, and the United States Supreme Court reversed. Under the statute, each citizen, 18 years of age or older, was to receive one dividend unit for each year of residence subsequent to 1959, the year that Alaska became a state. Id. at 57, 102 S.Ct. at 2311, 72 L.Ed.2d at 676. The value of each dividend unit was fixed at $50 by the statute for the 1979 fiscal year. Ibid. Plaintiffs attacked the distribution scheme as a violation of their right to equal protection and their constitutional right to migrate to Alaska; to establish residency there; and to enjoy the full rights of Alaskan citizenship on the same terms as all other citizens of the state. Ibid. The Court said that when a state distributed its benefits unequally, the distinctions it makes to achieve such unequal distribution are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment.
It was argued that there were three justifications for the distinctions made in the distribution program: (1) a financial incentive to individuals to establish residence in Alaska; (2) prudent management of the funds used for distribution and (3) a relationship of benefits to contributions made by citizens during their years of residence. Id. at 61, 102 S.Ct. at 2313, 72 L.Ed.2d at 678.
In striking down the Alaska statute, the Court said that the last of the state’s objectives, namely, to reward citizens for past contributions, is not a legitimate state purpose. The Court said that, “[t]he Equal Protection Clause prohibits such an apportionment of state services.” Id. at 63, 102 S.Ct. at 2314, 72 L.Ed.2d at 679 (quoting Shapiro v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 1330, 22 L.Ed.2d 600, 614 (1969)).

II.

In defending the constitutionality of the statute and the New Jersey Constitution under the Federal Constitution, the municipal *11 ity argues that plaintiff is not a member of a class which is entitled to protection.
The municipality argues that the constitutional and statutory provisions which are the subject matter of this litigation create a classification for exemption from local property taxation based on the status of the owner and not the use of the property. In view of the uniformity clause of the New Jersey Constitution, article 8, section 1, paragraph 1 which provides that “[pjroperty shall be assessed for taxation under general laws and by uniform rules,” it was necessary for the people of the State of New Jersey to amend the constitution in order to give a tax benefit to veterans. “A specific provision for veterans had to be written into the constitution since that was a classification by status, not use.” New Jersey State League of Municipalities v. Kimmelman, 105 N.J. 422, 432, 522 A.2d 430 (1987). Such a classification does not contravene the Equal Protection Clause of the United States Constitution. When a state seeks to benefit its veterans, it “is making neither an invidious nor irrational distinction among its residents.” Hooper v. Bernalillo County Assessor, supra, 472 U.S. at 620, 105 S.Ct. at 2867, 86 L.Ed.2d at 495. Of course, New Jersey law is to the same effect, “[Vjeterans’ preference laws do not involve a suspect class.” Darnell v. Moorestown Twp., 167 N.J.Super. 16, 21, 400 A.2d 492 (App.Div.1979) (citing Ballou v. State, 148 N.J.Super. 112, 122, 372 A.2d 333 (App.Div.1977), aff'd, 75 N.J. 365, 382 A.2d 1118 (1978)).

III.

As set forth in Drew Associates v. Travisano, 122 N.J. 249, 584 A.2d 807 (1991), alleged equal protection violations are tested at three levels: “strict scrutiny when an act involves a fundamental right or a suspect class; intermediate scrutiny when an act involves a semi-suspect class; and minimal rational-basis scrutiny in all other cases.” Id. at 258, 584 A.2d 807 (citing Brown v. City of Newark, 113 N.J. 565, 573, 552 A.2d 125 (1989)).
The present case, like Hooper, involves the creation of two classes in the context of a statute dealing with taxation: (1) *12 veterans; and (2) veterans who are residents of New Jersey. Unlike Hooper, however, the statute in the present case is constitutional.
The United States Supreme Court has said, “[legislatures have especially broad latitude in creating- classifications and distinctions in tax statutes.” Regan v. Taxation with Representation, 461 U.S. 540, 547, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129, 138 (1983).
The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized____ It has ... been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of fionstitution-ality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.
Ubid. (quoting Madden v. Kentucky, 309 U.S. 83, 87-88, 60 S.Ct 406, 408, 84 L.Ed. 590, 593 (1940)).]
To the same effect is Airwork Service Division v. Taxation Division Director, 2 N.J. Tax 329, 348 (Tax 1981), aff'd, 4 N.J.Tax 532 (App.Div.1982), aff'd, 97 N.J. 290, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985).
Furthermore, a classification involving veterans does not result in “invidious or irrational” distinctions among a state’s residents; does not affect a suspect or semi-suspect class; and does not regulate fundamental rights. Therefore, the classification which is the subject matter of this litigation need only be rationally related to a legitimate state interest to satisfy federal equal protection requirements. See Dandridge v. Williams, 397 U.S. 471, 484-85, 90 S.Ct. 1153, 1611, 25 L.Ed.2d 491, 501-02 (1970); Drew Associates v. Travisano, 122 N.J. 249, 258, 584 A.2d 807 (1991); and M. Alfieri Co., Inc. v. State of New Jersey, Dept. of Environmental Protection and Energy, 269 N.J.Super. 545, 558, 636 A.2d 87 (App.Div.1994). Confirming the level of scrutiny in this case, that the classification is subject to rational basis review and not a higher level of scrutiny, is Regan v. Taxation with Representation, supra. “Statutes are subjected to a higher level of scrutiny if they interfere with the exercise of a fundamental right, such as freedom of speech, or employ a suspect classification, such as *13 race.” Id., 461 U.S. at 547, 103 S.Ct. at 2001-02, 76 L.Ed.2d at 137-38.
Additionally, contrary to plaintiffs arguments, the residence requirement in this case is not a fixed-date or durational residence requirement subject to strict scrutiny. It is a bona fide residence requirement recognized as constitutional in Martinez v. Bynum, 461 U.S. 321, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983).
A bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by its residents____ A bona fide residence requirement simply requires that the person does establish residence before demanding the services that are restricted to residents.
[Id at 328-29, 103 S.Ct. at 1842-43, 75 L.Ed.2d at 887].
This case also said,
A bona fide residence requirement implicates no “suspect” classification, and therefore is not subject to strict scrutiny. Indeed, there is nothing invidiously discriminatory about a bona fide residence requirement if it is uniformly applied. Thus the question is simply whether there is a rational basis for it.
[Id. at 328 n. 7, 103 S.Ct. at 1842 n. 7, 75 L.Ed.2d at 887 n. 7.]
As in both Martinez v. Bynum, supra, and Regan v. Taxation with Representation, supra, in the present case there is no fundamental right, such as voting or freedom of speech, nor is there any suspect classification such as race, nor any semi-suspect classification such as gender. Therefore, minimal rational basis review is all that is required in this case, because there is, in fact, no durational residence requirement. As indicated, a bona fide residence requirement that the recipient of state benefits be a resident of the state in order to receive such benefits does not violate the Equal Protection Clause of the United States Constitution.
In applying the rational basis standard, the question is “whether there is any conceivable state of facts which would afford a’ rational basis for the classification.” New Jersey State Bar Association v. Berman, 259 N.J.Super. 137, 145-46, 611 A.2d 1119 (App.Div.1992). “The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.” Regan v. Taxation with Representation, supra, 461 U.S. at 547-48, 103 S.Ct. at 2002, 76 L.Ed.2d at 138. Consequent *14 ly, because the minimum rationality test is the least exacting of the standards of review, and because N.J.S.A. 54:4-30.30 is a statute involving taxation, it must be found constitutional unless the presumption of constitutionality is overcome “by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes.” Regan v. Taxation with Representation, supra, 461 U.S. at 547, 103 S.Ct. at 2002, 76 L.Ed.2d at 138.
When a surviving spouse seeks exemption from local property taxation, the requirement that the deceased veteran spouse must have been a resident of New Jersey creates a classification that is neither hostile nor discriminatory against particular persons and classes. The residence requirement is an appropriately defined bona fide residence requirement.
The object of the legislation is to benefit the veteran by granting him or her an exemption from property taxes. The benefit is for veterans, a classification which the people of this State could create in their constitution. The objective is legitimate in accordance with Hooper, supra, which held that a classification involving veterans is an acceptable classification because it encourages veterans to establish residence and it rewards them for honorable military service. There is then a rational basis for the residence requirement because the state is entitled to benefit its resident veterans so long as it benefits all resident veterans equally and thereby recognizes the need for relief by all veterans. Benefits are not conditioned on length of residence but are conferred on all resident veterans equally, and benefits are limited only by actual residence.
The exemption provision in this case does not create a suspect class. It does not distinguish between newly arrived veterans and veterans who have resided in the state for a given period of time. All resident veterans are entitled to the benefit of exemption from real estate taxation no matter how long they have lived in the state. A state may indeed take care of “its own” provided “its own” are treated equally. Hooper v. Bernalillo County Assessor, supra, 472 U.S. at 623, 105 S.Ct. at 2868, 86 L.Ed.2d at 496. *15 Similarly, the spouse of a deceased veteran who was entitled to the exemption is entitled to succeed to the spouse’s exemption. Plaintiff, however, is not the spouse of a deceased veteran entitled to tax exemption, and she is not entitled to the exemption.

IV.

Plaintiff advances the hypothetical situation that a totally and permanently disabled veteran and his wife move into New Jersey, purchase a home in New Jersey, take title to the home and take up residence in the home on September 1. On September 2, they apply for, and receive, exemption from local property taxation in accordance with N.J.S.A 54:4-3.30. On September 3, the veteran dies. The surviving spouse is entitled to continue the exemption from local property taxation under N.J.S.A 54:4r-3.30. Plaintiff, on the other hand, argues that she, also the surviving spouse of a totally and permanently disabled veteran, is not entitled to an exemption from local property taxation because her deceased veteran spouse was not a resident of the State of New Jersey on the date of his death. Plaintiff argues that there is no equal protection where a statute' would permit such a situation.
To the contrary, however, the Equal Protection Clause does not require that all persons be treated alike. Rather, it requires that similar persons be treated similarly, and that people of different circumstances be treated differently. Schneider v. City of East Orange, 196 N.J.Super. 587, 594, 483 A.2d 839 (App.Div.1984), aff'd, 103 N.J. 115, 510 A.2d 1118 cert. denied, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986). “[U]nless legislation creates an inherently suspect classification, a legislative classification will be presumed valid, even if it has the effect of treating some differently from others, so long as it bears some rational relationship to a permissible state interest.” Ibid. When a classification has been made, it must rationally further legitimate government objectives and it must be uniformly applied. Martinez v. Bynum, supra, 461 U.S. at 328-29, 103 S.Ct. at 1842-43, 75 L.Ed.2d at 887. The exemption, therefore, cannot be extended to plaintiff, a person who is clearly not a member of the class of *16 persons intended to receive the exemption, without violating the Equal Protection Clause with respect to the true members of the class.
The New Jersey Legislature, which has broad discretion in creating classifications when tax matters are involved, chose to extend the veteran’s exemption to a particular class of persons, namely, resident surviving spouses of deceased resident eligible veterans. This classification rationally furthers a legitimate government objective. The hypothetical surviving spouse to whom plaintiff refers is a member of the class. To deny her the exemption because of her husband’s short duration of residence would clearly violate the Equal Protection Clause. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).
Plaintiff, however, is not a member of the class of persons intended to receive the exemption. As such, she cannot, in compliance with the equal protection requirements of the Federal Constitution, be treated the same as those persons who are members of the class of persons intended to receive the exemption. Thus the denial of the exemption to plaintiff, contrary to her assertion, is equal protection. The argument advanced by plaintiff is also contrary to Hooper, supra, on which she relies. A state may not grant benefits to residents “based on how long they have been in the State.” Id., 472 U.S. at 623, 105 S.Ct. at 2869, 86 L.Ed.2d at 496-97. A state may, however, impose a bona fide residence requirement. Martinez v. Bynum, supra.

V.

Plaintiff also argues that she has been denied the right of migration under the Privileges and Immunities Clause of the United States Constitution. She argues that, “[t]he constitutional right to travel from one State to another ... occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized.” Shapiro v. Thompson, supra, 394 U.S. at 630, 89 S.Ct. at 1329, 22 L.Ed.2d at 613, (quoting United States v. Guest, 383 U.S. 745, 757-58, 86 S.Ct. 1170, 1178, 16 L.Ed.2d 239, 249 (1966)). A more *17 expansive definition of the right was expressed in Zobel v. Williams, supra, in which the Court said, “[i]n addition to protecting persons against the ereetion of actual barriers to interstate movement, the right to travel, when applied to residency requirements, protects new residents of a state from being disadvantaged because of their recent migration or from otherwise being treated differently from longer term residents.” 457 U.S. at 60 n. 6, 102 S.Ct. at 2312 n. 6, 72 L.Ed.2d at 677-78 n. 6
Based primarily on Zobel v. Williams, supra, plaintiff argues that she, as a newcomer, has been denied the same privileges afforded to resident surviving spouses whose resident veteran spouses have died. However, she is not, because of her recent move into New Jersey, being denied any privileges which other citizens of New Jersey enjoy. No surviving spouse of a nonresident veteran, who subsequently takes up residence in New Jersey, is entitled to a surviving spouse exemption. Her lack of qualification for the exemption from local property taxation is not based on her recent migration into the state nor is she treated any differently from surviving spouses of non-resident veterans who have lived in the state longer than she has. She does not qualify under either the New Jersey Constitution or the enabling legislation because her husband did not qualify.
In relying on Zobel, plaintiff has overlooked the edifying language in Justice Brennan’s concurring opinion distinguishing between a bona fide residence requirement and a durational residency requirement.
In my view, it is difficult to escape from the recognition that underlying any scheme of classification on the basis of duration of residence, we shall almost invariably find the unstated premise that “some citizens are more equal than others.” We rejected that premise and, I believe, implicitly rejected most forms of discrimination based upon length of residence, when we adopted the Equal Protection Clause.
[Id. at 71, 102 S.Ct. at 2318-19, 72 L.Ed.2d at 685 (Brennan, J., concurring).]
To the same effect is Martinez v. Bynum, supra.
On several occasions the Court has invalidated requirements that condition receipt of a benefit on a minimum period of residence within a jurisdiction, but it always has been careful to distinguish such durational residence requirements from bona fide residence requirements.
*18 [Id., 461 U.S. at 325, 103 S.Ct. at 1841, 75 L.Ed.2d at 885.]
Martinez v. Bynum also specifically addresses the constitutional right of interstate travel. As already indicated, that case held that a bona fide residence requirement does not contravene the Equal Protection Clause of the United States Constitution because it “furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents.” Id. at 328, 103 S.Ct. at 1842, 75 L.Ed.2d at 887.
The Court also said,
[s]ueh a requirement ■with respect to attendance in public free schools does not violate the Equal Protection Clause of the Fourteenth Amendment. [Footnote 7 quoted, infra.] It does not burden or penalize the constitutional right of interstate travel, for any person is free to move to a State and to establish residence there.

[Ibid.]

Footnote 7 reads as follows:
A bona fide residence requirement implicates no “suspect” classification, and therefore is not subject to strict scrutiny. Indeed, there is nothing invidiously discriminatory about a bona fide residence requirement if it is uniformly applied. Thus the question is simply whether there is a rational basis for it.
This view assumes, of course, that the “service” that the State would deny to nonresidents is not a fundamental right protected by the Constitution. A State, for example, may not refuse to provide counsel to an indigent nonresident defendant at a criminal trial where a deprivation of liberty occurs.
[Id. at 328 n. 7, 103 S.Ct. at 1842 n. 7, 75 L.Ed.2d at 887 n. 7.]
As public education is not a right granted by the Federal Constitution, neither is exemption from local property taxation such a constitutional right.

VI.

As earlier pointed out, plaintiff seeks a declaration that the New Jersey Constitution and the statute creating an exemption from local property taxation for the surviving spouse of resident disabled veterans are unconstitutional under the Federal Constitution. If I were to agree with plaintiff, and declare the New Jersey Constitution and the enabling legislation unconstitutional, such a declaration would not benefit plaintiff. It would merely deny to the surviving spouses of resident disabled veterans the right to exemption from local property taxation. Of course, for all the reasons given, neither the New Jersey Constitution nor the en *19 abling legislation referring to tax exemptions for the surviving spouses of disabled resident veterans is unconstitutional.
It is, however, important to deal with the contention implicit in plaintiffs position: both the constitution and the legislation should be expanded to create a classification of persons entitled to exemption from local property taxation consisting of the surviving spouses of non-resident disabled veterans who move into the State of New Jersey after the death of the disabled veteran. This cannot be done. As both Zobel and Hooper indicate, the Supreme Court of the United States remanded those cases to the state judiciary to determine the manner in which the constitutional infirmities would be corrected. And in Wrightstown Borough v. Medved, 193 N.J.Super. 398, 474 A.2d 1077 (App.Div.1984), the Appellate Division engaged in “judicial surgery” by making an offending statutory provision gender-neutral, holding “that both the constitutional and statutory legislators would have preferred to obey the mandate of the United States Constitution by extending the exemption to veterans’ widowers rather than by withdrawing it from veterans’ widows.” Id. at 404, 474 A.2d 1077.
When the denial of equal protection is based on a suspect classification, “judicial surgery” is justified. Callen v. Sherman’s, Inc., 92 N.J. 114, 455 A.2d 1102 (1983). In the present case, however, instead of neutralizing a state constitutional provision and the enabling legislation, by reforming it to avoid a suspect class infirmity, plaintiff would have me create an entirely new class of persons who are entitled to the exemption from local property taxation which she seeks. I find no authority for such action. There is in fact, ample authority to the contrary. “To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people.” M. Alfieri Co., Inc. v. State of New Jersey, Dept. of Environmental Protection and Energy, 269 N.J.Super. 545, 554, 636 A.2d 87 (App.Div.1994) (quoting Service Armament Co. v. Hyland, 70 N.J. 550, 559, 362 A.2d 13 (1976) (quoting Phillips v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095, 1099 (1945))).
The complaint is dismissed.

 Counsel for plaintiff notified the Attorney General, pursuant to R. 4:28-4, that this case involves an attack on the constitutionality of a statute. The Attorney General responded by advising the court that he will not intervene nor participate in the matter, but he said he fully supports the position of defendant.